**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

May 21, 2025

Kurt M. Heyman, Esquire
Emily A. Letcher, Esquire
Heyman Enerio Gattuso
 & Hirzel LLP
1201 North Market Street
Wilmington, Delaware 19801

R. Garrett Rice, Esquire
Elizabeth M. Taylor, Esquire
Ross Aronstam & Moritz LLP
1313 North Market Street
Wilmington, Delaware 19801

RE: *Tracy W. Baugh v. John R. Ingle, Jr. et al.*,
C.A. No. 2024-0460-LWW

Dear Counsel:

Two former business partners sold the assets of their South Carolina entity. One of those partners was a partial owner of another entity that later sold its assets to the same buyer at a higher price. Litigation ensued in three fora.

One partner is suing in South Carolina state court for purported breaches of fiduciary duty under South Carolina law. The other partner is suing in South Carolina federal court. He also sued here, seeking specific performance, an anti-suit injunction, and declaratory relief to stop the South Carolina state action.

The parties have cross-moved for summary judgment. This decision partly grants one of the motions insofar as the plaintiff is not entitled to equitable relief.

As to the remaining claim for declaratory relief, I elect to enter a stay. The South Carolina court is best suited to resolve whether a party has derivative standing to pursue claims pending before it under South Carolina law on behalf of a South Carolina entity.

## I.  BACKGROUND

The following description is drawn from the pleadings, facts not subject to reasonable dispute, and exhibits the parties submitted, including filings in a related South Carolina action.[1]

### A.  The Four Star Asset Sale

Four Star Industries LLC is a manager-managed South Carolina limited liability company.[2] It sold high-density polyethylene (HDPE) conduit for industrial

---

[1] *See* Verified Compl. for Injunctive and Other Relief (Dkt. 1) ("Compl."); Compl. Ex. B ("SC State Compl.") ¶ 50; Verified Am. Compl. for Specific Performance, Injunctive, and Other Relief (Dkt. 32) ("Am. Compl."); Letter from Ingle's Counsel Enclosing a Copy of Def. John R. Ingle, Jr.'s New S. Carolina Compl. (Dkt. 28) Ex. 1 ("Am. SC State Compl.") ¶ 23; *see also Nelson v. Emerson*, 2008 WL 1961150, at *2 n.2 (Del. Ch. May 6, 2008) (taking judicial notice of court filings in federal proceedings); *In re Books-A-Million, Inc. S'holders Litig.*, 2016 WL 5874974, at *1 (Del. Ch. Oct. 10, 2016) (taking judicial notice of "facts . . . not subject to reasonable dispute" (citing *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 170 (Del. 2006))).

[2] Am. Compl. ¶¶ 2; 14. The company later changed its name to TBSMRI, LLC on January 12, 2022. *Id*. ¶ 2. I continue to refer to it as Four Star in this decision.

uses, most of which was manufactured in its South Carolina facility.[3] Three of Four Star's founding members—John Ingle, Jr., Tracy Baugh, and Stephen Maskas— each held one-third of Four Star's issued membership units.[4]

In December 2021, Four Star entered into an asset purchase agreement (the "APA") in which it agreed to sell substantially all of its assets to Atkore HDPE, LLC for $25 million.[5] Baugh, Ingle, and Maskas signed the APA as equity owners, and Maskas also signed on behalf of Four Star as its managing member.[6] Among the Four Star assets sold to Atkore were certain "claims, causes of action, lawsuits, judgments, demands, warranties, and indemnities against third parties . . . ."[7]

The APA is governed by Delaware law and contains a Delaware choice of forum provision.[8]

---

[3] *Id.* ¶ 26; *see* Am. SC State Compl. ¶¶ 17-18, 24.

[4] Am. Compl. ¶ 25; *see also* Am. SC State Compl. ¶¶ 25, 38 (explaining that each of Four Star's four founding members initially held a one-quarter interest, and the three members relevant to this action bought out the share of Dave Ward and distributed it equally among themselves).

[5] Am. Compl. ¶ 27; *see* Am. Compl. Ex. A (Dkt. 4) ("APA").

[6] Am. Compl. ¶ 28.

[7] APA § 7.01(b)(vi) (defining "Acquired Assets"); *see also id.* § 1.01 (providing that Four Star "shall sell, assign, transfer, convey, and deliver to [Atkore]" certain "Acquired Assets").

[8] *Id.* §§ 8.11, 8.12; *see infra* note 62 and accompanying text.

### B.    The Elite Asset Sale

Baugh was not only a member of Four Star, but also a partial owner of Elite Polymer Solutions, LLC—a Texas-based HDPE manufacturer.[9]  Ingle learned of Baugh's involvement with Elite just before Atkore's purchase of the Four Star assets.[10]  The asset sale closed nevertheless, and Ingle accepted consideration from Atkore.[11]

Almost a year later, in November 2022, Atkore purchased Elite's assets for $91.6 million—$66.6 million more than it paid for Four Star's assets.[12]

### C.    The First South Carolina Action

In July 2023, Ingle sued in South Carolina state court on behalf of himself and Four Star (the "First South Carolina Action").[13]  His claims focused on Atkore's

---

[9] Am. Compl. ¶ 33.

[10] *Id.* ¶ 34 ("Prior to the closing of the Four Star asset sale transaction contemplated by the [APA], Ingle was informed and aware of the existence of Elite and Baugh's ownership and involvement with Elite.").  In an earlier version of his South Carolina complaint, Ingle alleged that Baugh's involvement with Elite came to light during the closing of Atkore's purchase of Four Star.  *See* SC State Compl. ¶ 50 ("Ingle learned of Baugh's interest in Elite for the first time during the lunch break of the closing.").  In the revised and operative version of that complaint, Ingle replaced this assertion with the statement that "Ingle first learned that Baugh had an interest in Elite in December 2021."  Am. SC State Compl. ¶ 64.

[11] Am. Compl. ¶ 35.

[12] *Id.* ¶ 36; SC State Compl. ¶ 66.

[13] *See* SC State Compl; *see also* Am. Compl. ¶¶ 6, 41.

purchase of Elite. He sued Baugh and Maskas for breach of fiduciary duty under South Carolina law, fraud, and breach of Four Star's limited liability company agreement.[14] He also sued Elite, Atkore, and one of Atkore's employees for tortiously interfering with Four Star's limited liability company agreement and aiding and abetting the alleged breaches of fiduciary duty.[15]

Two months later, in September, Baugh moved to dismiss the First South Carolina Action.[16] He argued, among other things, that Ingle should have sued in Delaware due to the APA's Delaware forum selection provision.[17] The parties engaged in mediation from January to April 2024 but failed to reach agreement.[18]

### D. This Litigation

On April 30, 2024, Baugh filed this suit. He sought an anti-suit injunction preventing Ingle from prosecuting claims in South Carolina.[19] He also sought declaratory judgments that: (1) the Delaware choice of law and forum selection

---

[14] SC State Compl. ¶¶ 79-100, 108-11, 118-23, 124-33.

[15] *Id.* ¶¶ 101-07, 112-17. He also sued all defendants for civil conspiracy. *Id.* ¶¶ 134-37.

[16] Compl. Ex. C ("Baugh's SC Mot. to Dismiss Br."); *see also* Decl. of Lane W. Davis to Pl.'s Reply Br. in Supp. of his Mot. for Partial Summ. J. and Answering Br. in Opp'n to Def. Ingle's Cross-Mot. for Partial Summ. J. (Dkt. 18) ("Davis Decl.") ¶ 7.

[17] Baugh's SC Mot. to Dismiss Br. 2-3.

[18] Compl. ¶¶ 41-42; Davis Decl. ¶¶ 12, 16-18.

[19] Compl. ¶¶ 45-55; *see also* Davis Decl. ¶ 9.

provisions of the APA applied to Ingle's claims in the First South Carolina Action; and (2) Ingle lacked standing to assert derivative claims on Four Star's behalf since Atkore had purchased the claims.[20] His complaint was accompanied by a motion for partial summary judgment.[21]

Meanwhile, Baugh moved to stay the First South Carolina Action while his motion for partial summary judgment was pending here.[22] On August 8, the South Carolina court denied his motion to stay.[23]

In Delaware, though Ingle had not answered Baugh's complaint, the parties agreed to submit expedited cross-motions for partial summary judgment.[24] On the eve of oral argument in this court, the First South Carolina Action was dismissed without prejudice for failure to verify the complaint.[25] The dismissal effectively

---

[20] Compl. ¶¶ 56-60.

[21] Dkt. 4.

[22] Davis Decl. ¶ 24; *see* Davis Decl. Ex. 3.

[23] Dkt. 23; Dkt. 23 Ex. A.

[24] Dkt. 11; *see* Opening Br. in Supp. of Mot. for Partial Summ. J. (Dkt. 3) ("Pl.'s Opening Br."); Def. John R. Ingle, Jr.'s Answering Br. in Opp'n to Pl.'s Mot. for Partial Summ J. and Opening Br. in Supp. of Cross-Mot. for Partial Summ. J. (Dkt. 14) ("Def.'s Opening Br."); Pl.'s Reply Br. in Supp. of his Mot. for Partial Summ. J. and Answering Br. in Opp'n to Def. Ingle's Cross-Mot. for Partial Summ. J. (Dkt. 17); Def. John R. Ingle, Jr.'s Reply Br. in Further Supp. of his Cross-Mot. for Partial Summ. J. (Dkt. 21) ("Def.'s Reply Br.").

[25] Dkt. 24; Dkt. 24 Ex. A.

mooted the parties' summary judgment motions on Baugh's request for an anti-suit injunction, but I heard oral argument as scheduled on September 5 since Ingle expressed his intention to re-file claims in South Carolina.[26] Baugh was given leave to amend his complaint after Ingle's anticipated re-filing of those claims.[27]

### E.    The Federal Action

Four days after oral argument in this court, on September 9, Baugh and Maskas sued in the United States District for the District of South Carolina (the "Federal Action").[28] They alleged that Ingle breached the APA by bringing derivative claims on behalf of Four Star in the South Carolina suit.[29] They sought a declaration that Ingle improperly initiated derivative claims against them and requested damages for abuse of process.[30]

---

[26] Dkt. 29 ("Hr'g Tr.") 16-17.

[27] Dkt. 25.

[28] Letter from Ingle's Counsel Enclosing Baugh's Compl. filed in the U.S. Dist. Ct. for the Dist. of S. Carolina on Sept. 9, 2024 (Dkt. 33) Ex. 1 ("SC Fed. Compl.").

[29] *Id.* ¶¶ 9-19, 28.

[30] *Id.* ¶ 42.

### F.    The Second South Carolina Action

On September 13, Ingle filed a new action in South Carolina (the "Second South Carolina Action").[31]

Ingle made several changes to his original complaint.  He replaced his breach of contract and fraud claims with requests for judicial accounting and dissolution.[32] He raised both direct and derivative claims under South Carolina law concerning Baugh and Elite's alleged "cooption of business opportunities" from Four Star.[33]  He also added three defendants—Four Star (for purposes of the dissolution claim) and two members of Elite who allegedly assisted Baugh with co-opting business opportunities from Four Star.[34]

### G.    Baugh's Amended Delaware Complaint

Baugh filed an amended complaint in this court on October 10 (the "Amended Complaint").[35]  He sought an anti-suit injunction of Ingle's Second South Carolina Action and related declaratory relief and added a new claim for specific performance

---

[31] *See* SC State Compl.

[32] Dkt. 28 Ex. 2 at 21-23.

[33] *Id.* at 16, 18.

[34] Am. SC State Compl. ¶¶ 98-104, 109-14, 115-18; *see id.* ¶¶ 9-11.

[35] Dkt. 32.

of the APA. In contrast to his original pleading that highlighted the forum selection clause in the APA, Baugh focused on whether Ingle could press derivative claims on behalf of Four Star in the Second South Carolina Action.[36]

Baugh's Amended Complaint was silent on the Federal Action he had filed. I was informed of the Federal Action by Ingle's counsel on October 14.[37]

### H. Additional Developments

On October 29, Ingle moved to dismiss the Federal Action.[38]

On November 1, the Second South Carolina Action was removed to federal court.[39] The defendants in the Second South Carolina Action then moved to dismiss.[40] Ingle moved to remand the case to state court.[41]

---

[36] *Compare* Compl. ¶¶ 46-55, *with* Am. Compl. ¶¶ 65-75.

[37] Dkt. 33.

[38] Def. John R. Ingle, Jr.'s Suppl. Br. in Opp'n to Pl.'s Mot. for Partial Summ. J. and in Supp. of his Cross-Mot. for Partial Summ. J. (Dkt. 39) ("Def.'s Suppl. Br.") 3.

[39] *Id.* at 3.

[40] *Id.* at 3-4.

[41] *Id.* at 4.

Considering these developments, I requested supplemental briefing on any changes to the parties' prior summary judgment arguments.[42] The parties filed their supplemental briefs on January 31, 2025.[43]

On March 7, the federal court remanded the Second South Carolina Action to state court.[44]

On April 29, the federal court denied Ingle's motion to dismiss the Federal Action.[45] The court concluded that the Federal Action was not parallel to the Second South Carolina Action or this Delaware action. It therefore declined to surrender federal jurisdiction.[46]

Both the Federal Action and Second South Carolina Action are pending.

## II.    ANALYSIS

The parties have cross-moved for summary judgment on Baugh's claims against Ingle. Under Court of Chancery Rule 56, summary judgment is granted only

---

[42] Dkt. 35.

[43] Suppl. Br. Supporting Pl.'s Mot. for Partial Summ. J. with Certificate of Serv. (Dkt. 38) ("Pl.'s Suppl. Br."); Def.'s Suppl. Br.

[44] Letter from Ingle's Counsel Providing Update on Related Action (Dkt. 40) (attaching the remand decision).

[45] Letter from Baugh's Counsel Enclosing an Order from the U.S. Dist. Ct. of S. Carolina (Dkt. 41) Ex. A.

[46] *Id.* at 15-16.

if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[47] "[T]he facts must be viewed in the light most favorable to the nonmoving party and the moving party has the burden of demonstrating that there is no material question of fact."[48]

The parties agree that there are no genuine issues of material fact in dispute.[49] But they debate whether Ingle's South Carolina derivative claims are improper under the APA as a matter of law.

## A. The Summary Judgment Cross-Motions

Baugh asks this court to bar Ingle from pressing derivative claims in the South Carolina Action. He claims that Ingle has breached and "repudiated" Sections 1.01(a), 7.01(b), and 7.01(b)(vi) of the APA.[50] Counts I, II, and III of the Amended Complaint are each based on that predicate but nominally request different relief: Count I seeks specific performance; Count II seeks injunctive relief; and Count III seeks declaratory relief.[51]

---

[47] Ct. Ch. R. 56(c).

[48] *Senior Tour Players 207 Mgmt. Co. v. Golftown 207 Hldgs. Co.*, 853 A.2d 124, 126 (Del. Ch. 2004).

[49] *See* Pl.'s Opening Br. 7-8; Def.'s Opening Br. 8.

[50] Am. Compl. ¶ 69; *see also id.* ¶¶ 60, 78.

[51] *Id.* ¶¶ 64, 73, 79.

Section 1.01(a) of the APA states that, at closing, Four Star would "sell, assign, transfer, convey and deliver to [Atkore], and [Atkore would] purchase and acquire from [Four Star], all of [Four Star's] rights, title and interest in and to, the Acquired Assets . . . ."[52] Section 7.01(b) defines "Acquired Assets" to mean Four Star's "rights, title and interest in and to all of the assets and rights used or held for use by [Four Star] in the [b]usiness . . . ."[53] Under Section 7.01(b)(vi), "Acquired Assets" include:

> all claims, causes of action, lawsuits, judgments, demands, warranties and indemnities against third parties, whether currently or in the future existing, in each case to the extent arising from or relating to the operation or conduct of the business conducted by [Four Star] . . . .[54]

Baugh asserts that he is entitled to partial summary judgment on his claims that Ingle has improperly asserted derivative claims on behalf of Four Star in the Second South Carolina Action.[55] He asks for a declaration that the "derivative claims filed by Ingle repudiate and, if allowed, would breach Sections 1.01(a),

---

[52] APA § 1.01(a); *see also supra* note 7 and accompanying text.

[53] APA § 7.01(b).

[54] *Id.* § 7.01(b)(vi); *see also supra* note 7 and accompanying text.

[55] Pl.'s Suppl. Br. 16-17.

7.01(b), and 7.01(b)(vi) of the [APA].”[56]  He also seeks an anti-suit injunction to “permanently enjoin[] Ingle from pursuing derivative claims on Four Star's behalf in the [Second South Carolina Action] or in any [c]ourt thereby compelling Ingle's specific performance with Sections 1.01(a) and 7.01(b) the [APA].”[57]

In his cross-motion for partial summary judgment, Ingle asserts that the injunctive relief requested by Baugh is unwarranted.[58]  He also argues that Baugh is not entitled to declarations including that: (1) the forum selection clause in the APA is “valid and binding”; and (2) that the South Carolina claims fall within the scope of such forum selection provision.[59]

I resolve the cross-motions by first determining that the Delaware forum provision does not apply to the Second South Carolina Action.  I next conclude that Baugh's ability to raise his standing defense in the Second South Carolina Action— and his Federal Action and declaratory judgment claim here—provide Baugh with an adequate remedy at law, making equitable relief is unavailable.  Finally, I decline

---

[56] *Id.* at 19 (outlining the relief sought).

[57] *Id.*; *see also id.* at 20 (requesting a preliminary anti-suit injunction, in the alternative).

[58] [Proposed] Order Denying Pl.'s Mot. for Partial Summ. Jud. and Granting Def. John R. Ingle, Jr.'s Cross-Mot. for Partial Summ. J. (Dkt. 14) (“Def.'s Proposed Summ. J. Order”) ¶ 3.

[59] *Id.* ¶ 3.a-c.

to resolve Baugh's declaratory judgment claim and elect instead to stay the remainder of this case in deference to the Second South Carolina Action.

### 1. The Forum Selection Provision

Baugh alleges that this court is the "proper forum" to issue the relief he seeks regarding Ingle's alleged violations of APA Sections 1.01(a) and 7.01(b).[60] He points out that the APA has a Delaware choice of law provision and forum selection provision.[61]

Section 8.12 of the APA states that "any litigation, proceeding or other legal action in connection with or relating to [the APA] . . . or any matters described [in the APA]" must be brought "exclusively in a court of competent jurisdiction located within the City of Wilmington, Delaware."[62] Because "resolution of Ingle's South Carolina claims will require judicial interpretation of Section 7.01(b)(vi) under Delaware law," Baugh contends that the Second South Carolina Action "falls beneath Section 8.12's exclusive venue language" and must be pursued in Delaware "to the exclusion of . . . South Carolina."[63]

---

[60] Am. Compl. ¶ 74.

[61] *Id.* ¶ 10.

[62] APA § 8.12.

[63] Pl.'s Opening Br. 11-12, 18.

Ingle, for his part, maintains that the parties' dispute falls outside the scope of the forum selection provision.[64]  He relies on *Parfi Holding AB v. Mirror Image Internet, Inc.*, where the Delaware Supreme Court outlined a test for determining whether a forum clause applies to claims.[65]  The court in *Parfi* explained that "the analysis must turn on the issue of whether [the challenged] claims would be assertable" in the absence of the agreement containing the forum selection clause.[66]

Ingle's derivative claims in the Second South Carolina Action are not ones "in connection with or relating to" the APA or the sale of Four Star's assets to Atkore.[67]  His claims center on the formation and running of Elite, and alleged misappropriation of Four Star's business opportunities.  Ingle alleges that Baugh breached his fiduciary duties by "[m]isappropriating Four Star's business plan" and "[l]everaging Four Star's relationships" in order to "[a]ctively and directly compet[e] with Four Star in the HDPE conduit market, thus usurping business

---

[64] Def.'s Opening Br. 3, 17-20; Def.'s Reply Br. 9-11; Def.'s Suppl. Br. 5 (noting that "[w]hile 'the gist of [Ingle's] complaint' remains the same—as Ingle represented that it would—the differences further show that each of Ingle's claims 'would be assertable had there been no' APA, which is the operative question" (first citing Hr'g Tr. 19-20; then citing *Parfi Hldg. AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 157 (Del. 2002))).

[65] 817 A.2d at 155.

[66] *Id.* at 157.

[67] APA § 8.12.

opportunities of Four Star."[68]  He also brings a similar claim against Maskas for

"[f]ailing to disclose to Ingle that Baugh covertly formed Elite to directly compete

with Four Star in the HDPE conduit market" and a related aiding and abetting

claim.[69]

Baugh does not—and cannot—contest that these are internal affairs issues.

"Under the internal affairs doctrine," matters regarding "breaches of fiduciary duty

and acts of aiding and abetting" are not governed "by the terms of" contracts.[70]

Instead, they implicate the "laws of the state of incorporation or, for an LLC . . . the

state of formation."[71]

The only connection between the derivative claims in the Second South

Carolina Action and the APA is that Ingle allegedly learned of Baugh's interest in

Elite during the closing of Atkore's purchase of Four Star's assets.[72]  This is a mere

---

[68] SC State. Compl. ¶ 84.

[69] *Id.* ¶ 92; *id.* ¶¶ 98-104.

[70] *OTK Assoc., LLC v. Friedman*, 85 A.3d 696, 719 (Del. Ch. 2014); *see also Amgine Techs. (US), Inc. v. Miller*, 2021 WL 5564688, at *10 (Del. Ch. Nov. 29, 2021) (concluding that fiduciary duty claims did not "aris[e] out of or relat[e] to" a contract with a forum provision because they "would exist in the absence of the [contract]").

[71] *Xcell Energy & Coal Co. v. Energy Inv. Grp., LLC*, 2014 WL 2964076, at *5 (Del. Ch. June 30, 2014).

[72] *See supra* note 10 and accompanying text.

accident of timing. The factual predicate for Ingle's derivative claims in the Second South Carolina Action occurred *before* the APA was signed. These claims are "independently and separately assertable" from and do not "depend on the existence of" the APA.[73]

Thus, Baugh has not shown as a matter of law that Section 8.12 of the APA bars Ingle from pursuing his claims in South Carolina. Baugh's Amended Complaint no longer seeks specific relief on the application of Section 8.12, however, which moots that aspect of Ingle's cross-motion.[74] Still, the fact that the Second South Carolina Action is not barred by the APA's forum selection provision means Baugh can raise his standing defense in South Carolina, which is an adequate remedy at law. I address how that bears on Baugh's claims for equitable relief next.

### 2. Equitable Relief

Baugh is correct that resolving whether Ingle has derivative standing to press claims on Four Star's behalf after Atkore bought its assets may require interpretation of the APA.[75] That inquiry could involve whether Ingle's claims in the Second South Carolina Action "arise from or relate to the operation of the business conducted by

---

[73] *Parfi*, 817 A.2d at 155, 157.

[74] Def.'s Proposed Summ. J. Order ¶ 3.a-b.

[75] *See* Pl.'s Opening Br. 11-12.

[Four Star]" pre-closing, falling within the APA's definition of "Acquired Assets."[76] But Baugh has not proven his entitlement to equitable relief on that basis.

In Count I, Baugh seeks specific performance of the APA to "require Ingle to refrain from asserting [any] claims derivatively when Atkore, not Four Star, owns such causes of action."[77] This is ultimately a request for an anti-suit injunction. Count II similarly seeks the "issuance of preliminary and permanent injunctive relief enjoining Ingle from repudiating Sections 1.01(a) and 7.01(b) of the [APA] . . . ."[78] Baugh acknowledges that his request for an injunction "works in tandem with [his] claim for specific performance."[79]

Both specific performance and anti-suit injunctions are extraordinary forms of equitable relief.[80] And both require the party requesting such relief to demonstrate the absence of an available remedy at law.[81] "[I]n order to be 'adequate,' a legal

---

[76] APA § 7.01(b)(vi); *see id.* § 1.01(a).

[77] Am. Compl. ¶ 64.

[78] *Id.* ¶ 73.

[79] *Id.*

[80] *See Pentwater Cap. Mgmt. LP v. Kaz*, 2022 WL 1052347, at *4 (Del. Ch. Apr. 8, 2022).

[81] *See, e.g.*, *Graciano v. Abode Healthcare, Inc.*, 2024 WL 960946, at *4 (Del. Ch. Mar. 4, 2024) (explaining that "a plaintiff must . . . prove that there exists no adequate remedy at law" to obtain specific performance (citing *Minn. Invco of RSA No. 7, Inc. v. Midwest Wireless Hldgs. LLC*, 903 A.2d 786, 793 (Del. Ch. 2006))); *In re COVID-Related Restrictions on Religious Servs.*, 285 A.3d 1205, 1233 (Del. Ch. 2022) (stating that to

remedy must be available as a matter of right, be full, fair and complete, and be as practical to the ends of justice and to prompt administration as the remedy in equity."[82]

Baugh has several adequate remedies at law available, which can be pursued independently or in conjunction. First, he can—as he did in the First South Carolina Action—raise a defense in the Second South Carolina Action that Ingle lacks derivative standing.[83] Second, he may continue to seek declaratory relief in the Federal Action based on Ingle's alleged "tortious[] abuse of process under South Carolina law" by pressing derivative claims in violation of APA Sections 1.01 and

---

obtain a permanent injunction, the movant must demonstrate "the inadequacy of remedies at law"), *aff'd*, 326 A.3d 626 (Del. 2024).

[82] *Clark v. Teeven Hldg. Co., Inc.*, 625 A.2d 869, 881 (Del. Ch. 1992).

[83] *See Manor Healthcare Corp. v. Tolbert*, 1986 WL 5476, at *3 (Del. Ch. 1986) ("[T]he ability of a party to obtain the equivalent of injunctive relief by raising its contentions as a defense in an action at law[] constitutes an adequate remedy that precludes injunctive relief in equity."); *Buczik v. Wonchoba*, 1993 WL 93444, at *2 (Del. Ch. Mar. 24, 1993) (concluding that a plaintiff was not entitled to specific performance where she could "raise [a] release as an affirmative defense" in another action, which was an adequate remedy at law). The Delaware Supreme Court has recognized that raising a forum selection clause as a defense in a foreign court may not constitute an adequate remedy at law since it "would deprive [the party forced to raise this defense] of the benefit of its bargain." *Nat'l Indus. Grp. (Hldg.) v. Carlyle Invs. Mgmt.*, 67 A.3d 373, 385 (Del. 2013). As explained in Section II.A.1, however, the forum selection clause itself is not at issue here, so this exception does not apply. Regardless, Baugh has chosen to avail himself of South Carolina courts on this issue.

7.01.[84]  Third, he is also pursuing in Count III of his Amended Complaint here declaratory relief on whether Four Star sold the derivative claims Ingle raised in the Second South Carolina Action.[85]

Accordingly, Baugh has not—and cannot—demonstrate that he is entitled to a judgment as a matter of law on Counts I and II.  Baugh's motion for summary judgment is therefore denied as to those claims and the requested equitable relief.  Ingle's cross-motion for summary judgment is granted insofar as Baugh is not entitled to relief on Counts I and II.[86]

### 3.    Declaratory Relief

The parties also cross-move for summary judgment on Count III, which is a declaratory judgment claim.  Baugh asserts that a "real, present, justiciable

---

[84] *See* SC Fed. Compl. ¶ 28(c) (seeking a declaration "Ingle knowingly asserted unsupportable derivative claims that he knew Four Star had sold to another entity"); *id.* ¶ 28(d) (seeking a declaration that "Ingle knowingly asserted derivative claims that he knew Four Star lacked the standing to assert"); *id.* ¶ 28(e) (seeking a declaration that "Ingle knowingly asserted derivative claims that he lacked standing to assert").

[85] Am. Compl. ¶ 79(c)-(f); *see e.g.*, *Graciano*, 2024 WL 960946, at *10 (concluding that a declaratory judgment was an adequate remedy at law where specific performance was sought); *Qlarant, Inc. v. IP Commercialization Labs, LLC*, 2022 WL 211367, at *4 (Del. Ch. Jan. 25, 2022) (holding that a plaintiff was not entitled to an injunction where it had an adequate remedy at law in the form of a requested declaratory judgment).

[86] *See* Def.'s Proposed Summ. J. Order ¶ 3(d); Def.'s Suppl. Br. 12-13; Def.'s Opening Br. 24-27.

controversy exists between Baugh and Ingle, as well as the other parties [Maskas, Four Star, and Atkore] regarding whether Ingle has the right to assert derivative claims in the [Second] South Carolina Action."[87] He requests declarations including that "[t]he derivative claims filed by Ingle repudiate and, if allowed, would breach Sections 1[.]01(a), 7.01(b), and 7.01(b)(vi) of the [APA]" and that "Four Star sold the derivative claims Ingle attempts to assert in the [Second] South Carolina Action to Atkore."[88]

"There is no 'right' to a summary judgment."[89] I decline to grant it as to Count III. The procedural twists and turns of this matter have left me without meaningful briefing on the meaning of Sections 1.01(a) and 7.01(b) of the APA. Ingle has yet to answer the Complaint. And the South Carolina matters continue to evolve. The parties' motions are therefore denied on Count III.

---

[87] Am. Compl. ¶ 78.

[88] *Id.* ¶ 78(b)-(c).

[89] *Telxon Corp. v. Meyerson*, 802 A.2d 257, 262 (Del. 2002) (quoting *Anglin v. Bergold*, 565 A.2d 279 (Del. 1989) (TABLE)); *see also Brunswick Corp. v. Bowl–Mor Co., Inc.*, 297 A.2d 67, 69 (Del. 1972) ("A litigant has no absolute right to the entry of summary judgment.").

### B. The Appropriateness of a Stay

Given the pendency of the Second South Carolina Action and the Federal Action, it would be unwise to take up the remaining issues in this case. Baugh's claims here are, in essence, a defense to Ingle's derivative claims in the Second South Carolina Action. And Baugh has put at issue in the Federal Action Ingle's ability to pursue derivative claims in the Second South Carolina Action.

This court "possesses the inherent power to manage its docket, including the discretion to stay a case pending the resolution of another case on the basis of 'comity, efficiency, or common sense.'"[90] That power includes the ability to "stay actions *sua sponte*."[91] Here, both comity and common sense compel a stay.

South Carolina has a far greater interest in these issues than Delaware. Ingle is a South Carolina resident. His derivative claims in the South Carolina Action are brought under South Carolina law and concern fiduciary duties owed to Four Star— a South Carolina entity. The fiduciary duties at issue arise from a South Carolina

---

[90] *Cummings v. Est. of Lewis*, 2013 WL 979417, at *10 (Del. Ch. Mar. 14, 2013) (quoting *SRG Glob., Inc. v. Robert Fam. Hldgs., Inc.,* 2010 WL 4880654, at *10 (Del. Ch. Nov. 30, 2010)).

[91] *Id.* at *10 (citing *Kingsland Hldgs., Inc. v. Fulvio Bracco*, 1996 WL 422340, at *2 (Del. Ch. July 22, 1996)); *see also In re Bay Hills Emerging P'rs I, L.P.*, 2018 WL 3217650, at *7 (Del. Ch. July 2, 2018) (granting a stay sua sponte in deference to the resolution of claims pending in another related state court action).

statute that specifies the duties owed by managers and members of a manager-managed limited liability company.[92]  The South Carolina court is eminently capable of determining whether a party in a suit before it has standing, even if resolving that issue might require it to apply Delaware law.

### C.    Fee Requests

Ingle and Baugh each raise entitlement to fee shifting.[93]  Section 8.03 of the APA provides that:

> [i]n the event any [a]ction is commenced by any party to enforce its rights under [the APA] against any other party(ies) [sic], the prevailing party in such [a]ction shall be entitled to recover from the other party(ies) [sic] all reasonable fees, costs and expenses, including reasonable attorneys' fees and court costs, incurred by the prevailing party in such [a]ction.[94]

Ingle has prevailed in part, insofar as he is entitled to partial summary judgment in his favor.  But it would be premature to resolve at this juncture which party will ultimately prevail.  When this action concludes, the parties may move for the payment of fees and expenses under Section 8.03.

---

[92] *See* SC State Compl. ¶ 83 ("Baugh owes fiduciary duties to Four Star and Ingle pursuant to S.C. Code Ann. § 33-44-409(h)(3)."); *id.* ¶ 84 (alleging that "Baugh breached his fiduciary duties of loyalty and good faith and fair dealing to Four Star and Ingle pursuant to S.C. Code Ann. § 33-44-409(b)(1-3) and (d)").

[93] Pl.'s Opening Br. 7; Def.'s Opening Br. 30.

[94] APA § 8.03(a).

## III.   CONCLUSION

Baugh's motion for summary judgment is denied as to Counts I and II.  Ingle's cross-motion for summary judgment is granted in part, insofar as Baugh is not entitled to the equitable relief sought in Counts I and II of the Complaint.

What remains of this action is stayed pending a determination in the Second South Carolina Action of whether Ingle has derivative standing to pursue his claims on behalf of Four Star.  Either party may at any time request that the stay be lifted.

IT IS SO ORDERED.

Sincerely yours,

/s/ *Lori W. Will*

Lori W. Will
Vice Chancellor